CHESNEY vs. VALLEY LIVE STOCK COMPANY et al.*
(No. 1231; March 16, 1926; 244 Pac. 216.)

QUIETING TITLE—PLEADING—EQUITY—MORTGAGEE NOT IN POSSESSION MAY SUE TO CANCEL QUITCLAIM DEED—MORTGAGES—APPEAL AND ERROR—FRAUD.

1. Petition for cancellation of quitclaim deed by mortgagee, alleging existence of mortgage, that purchaser of land had assumed it on day deed was executed, that no duty was owing on plaintiff's part to make such deed, and there was no consideration therefor, held sufficient to state cause of action for removing cloud, notwithstanding emphasis in petition of allegations that deed should be canceled as forgery.

2. In absence of motion to have petition made more specific, court must construe its allegations liberally in determining whether judgment is based on proof of cause of action properly pleaded.

3. Mortgagee not in possession and having merely lien held entitled to maintain suit for cancellation of quitclaim deed as cloud, notwithstanding Comp. St. 1920, § 6234; there being no adequate remedy at law.

4. Equity must not hesitate to protect property rights, where no relief can be granted in actions at law.

5. Quitclaim deed by mortgagee of land, casting cloud on and obstruction to mortgage and not intended as release, is presumed to be an injury to mortgagee.

6. Action to cancel quitclaim deed as cloud on mortgage cannot take place of suit to foreclose mortgage, and is merely for protection of lien or to aid its ultimate enforcement.

7. Quitclaim deed from mortgagee to assignee of mortgagor will not operate as release of mortgage if not so intended.

8. Correct judgment will not be reversed on appeal because founded partially or wholly upon wrong premises.

9. In action to cancel quitclaim deed, admission of evidence of fraud held not prejudicial error, although fraud was not pleaded, where there was no finding of fraud.

10. In suit by mortgagee to cancel quitclaim deed as cloud, admission of evidence of fraud in procuring deed held proper, although fraud was not pleaded, as showing that there was no intent that deed should operate as release of mortgage.

11. That purchaser of land assumed to pay mortgage indebtedness and executed new chattel mortgages and paid interest already due held no consideration for quitclaim deed by mortgagee claimed to release mortgage.

*NOTE—See Headnotes (1, 2) 31 Cyc p. 79 n. 4; 32 Cyc p. 1353 n. 44 (3-5) 6 CJ p. 269 n. 40; 21 CJ p. 35 n. 15; p. 115 n. 81; p. 118 n. 35; 34 CJ p. 616 n. 17; 32 Cyc p. 1306 n. 6; p. 1308 n. 18; p. 1317 n.73; 1337 n. 22, 23; p. 1370 n. 13 New (6)) 32 Cyc p. 1306 n. 5 New (7, 8) 4 CJ p. 663 n. 92; 27 Cyc p. 1045 n. 28; p. 1419 n. 41 (9, 10) 4 CJ p. 946 n. 14; p. 1002 n. 36; 32 Cyc p. 1367 n. 90 (11) 4 CJ p. 1135 n. 23; 27 Cyc p. 1419 n. 49.

APPEAL from District Court, Uinta County; JOHN R. ARNOLD, Judge.

Action by James Chesney against the Valley Live Stock Company, Federal Reserve Bank of San Francisco, and others. Judgment for plaintiff, and defendant last named and others appeal.

*Henry D. Moyle* and *P. W. Spaulding,* for appellants.

A litigant may not take inconsistent positions in his pleadings. Wyoming Consolidated & Development Co. v. Buffalo, (Wyo.) 166 Pac. 393. Respondent cannot prove the execution of the deed and also offer evidence as to forgery thereof. Ryder v. Bates, 93 Fed. 31. No recovery can be had upon a cause of action inconsistent with that alleged in pleadings. Reed v. McConnell, 133 N. Y. 425; Bush v. Haire, 163 N. W. 875; Kulhanek v. Kulhanek, (Nebr.) 184 N. W. 139; Newberry v. Munshower, 29 Ohio St. 617; Jesse v. Thatcher, 22 Ohio St. 668; Chamberlain

v. Sawyer, 19 Ohio 360; Hilsinger v. Trickett, (Ohio) 99
N. E. 305; Gilles v. Hopkins, (Cal.) 153 Pac. 724; People v.
Johnson, (Cal.) 93 Pac. 1042; Wilkinson v. Grant, (Cal.)
189 Pac. 319; Arnold v. Angel, 62 N. Y. 508; Dunlap v.
Chicago R. R. Co., (Kan.) 143 Pac. 415; City v. O'Neill,
(Ore.) 192 Pac. 909. The rule is universal and authorities
might be multiplied in support thereof. The ordinary
rule, with reference to pleading fraud, requires facts
showing all essential elements of fraud. 27 C. J. 30; 12
R. C. L. 416-420; Smith v. Stone, (Wyo.) 128 Pac. 612;
Riddle v. Isaacs, (Ore.) 192 Pac. 392. Respondent failed
to allege possession, which is necessary to support action
to quiet title. Pomeroy Equity, 2159; United Land Ass'n.
v. Co. (Cal.) 69 Pac. 1064; Frost v. Sprightly, 121 U. S.
552; Fla. v. Furman, 180 U. S. 402; Baldwin v. McDonald,
(Wyo.) 156 Pac. 27; Durrell v. Abbott, (Wyo.) 44 Pac.
647. A general denial was sufficient. Iba v. Central
Ass'n. (Wyo.) 40 Pac. 527; Pennie v. Hildreth, (Cal.) 22
Pac. 398. Plaintiff is required to establish his title. Toland
v. Toland, (Calif) 55 Pac. 681; Heaten v. Lodge (Ind.)
103 N. E. 148; Van Patten v. O'Brien, (Nebr.) 129 N. W.
540. The finding of the lower court was based on lack of
consideration. Consideration is not always necessary to
support a conveyance. Johnson v. Cleveland, 15 Mich.
94; 2 Tiffany on Real Property, 438; Feeney v. Howard,
(Calif.) 21 Pac. 984; Gould v. Lynd, 114 Mass. 366; Wells
v. Kuhn, 221 S. W. 19. Parol evidence is incompetent
to overcome a recital of consideration appearing in a deed.
Groves v. Groves, (Ohio) 62 N. E. 1044; Ill. Central v.
Wolfe, 37 Ill. 354; Haslam v. Jordan, (Me.) 70 Atl. 1066;
Chambers v. Chambers, (Mo.) 127 S. E. 87. There is no
limit to the cases and authorities sustaining the principle.
Respondent pleads forgery. The court's decree was predi-
cated on want of consideration. The judgment should be
reversed.

*Louis Kabell, Jr., M. E. Wilson* and *E. A. Walton,* for respondent.

A defense of bona fide purchaser must be made by answer. 39 Cyc. 1778-1780. These defendants appear as attaching creditors, not as bona fide purchasers. Whelan v. North Platte Co., 11 Wyo. 348; Frank v. Hicks, 4 Wyo. 516. A judgment creditor is not a purchaser. Durell v. Abbott, 6 Wyo. 265. Defendants have neither alleged nor proven an equitable lien superior to plaintiff. United Land Ass'n v. Co. (Calif) 69 Pac. 1064; Wall v. Bagnus, (Colo.) 30 Pac. 56. 4617 C. S. defines quit claim deeds. A quit claim deed passes all legal and equitable rights of the grantor in the premises. 4718 C. S. The method for discharging mortgages of record is pointed out in Secs. 4626, 4650 and 4653 C. S. The instrument is not an equitable release. 2 Devlin Real Estate, 1330. The doctrine of merger does not apply where equity would be defeated. Beauchamp v. Bertig, (Ark.) 23 L. R. A. N. S. 659; Longfellow v. Barnard (Neb.) 79 N. W. 255; Waters v. Waters, (Ia.) 89 A. D. 540; Latton v. McCarty (Wis.) 125 N. W. 430; 2nd Jones Mortgages, 976. Deeds executed and delivered contemporaneously will be given effect in accordance with the intentions of the parties. Blum v. Parson Co. (N. J.) 78 Atl. 174; Bylund v. Crook, (Utah) 208 Pac. 504. Cancellation will be decreed as well upon fraud as upon forgery. The distinction being made in behalf of an innocent and bona fide purchaser for value. 2 Pomeroy Eq. 918; McGinn v. Tobey, et al., (Mich.) 28 N. W. 818; Toney v. Toney, (Ore.) 165 Pac. 221. The answers are insufficient to show a bona fide purchaser. The Ohio rule does not forbid inconsistency of defenses unless they amount to repugnancy, which excludes varification without false swearing. 1 Bates Pl. Pr. and Forms, 347. The case of Wyo. v. Buffalo Co., cited by appellant, supports our position. Pleadings are liberally construed in 5686 C. S., and may be made more definite and certain by

motion. Appellants have even resorted to the contention that plaintiff made a gift of the premises to the Valley Company, but there is no evidence of such intention. The parol evidence rule is not available to strangers or attaching creditors. Ranson v. Wickstrom, (Wash.) 146 Pac. 1041. An execution creditor, purchasing at his own sale, is not a bona fide encumbrancer. L. R. A. 1916 A; Hart v. Meredith, (Tex.) 65 S. W. 507. A creditor of a vendor cannot require that a parol for the sale of land shall be held void, Lefferson v. Dallas, 20 Ohio St. 68, nor invoke the statute of frauds. Morrison v. Collier 79 Ind. 417; Kemp v. Bank, 109 Fed. 48; Murray Hill Co. v. Havinor, (Utah) 66 Pac. 762; 27 C. J. 307.

BLUME, Justice.

This action was brought by James Chesney, as plaintiff, against the Valley Live Stock Company and other defendants, to cancel a certain quit claim deed and have the rights of the defendants declared junior and inferior to the rights of the plaintiff. It appears that on October 1, 1917, James Chesney, the plaintiff below and hereafter referred to as the respondent, was the owner of certain lands in Uinta county, Wyoming. On that date he sold the land, and live stock and other property on the land, to his son, Edmund L. Chesney, for the sum of $150,000, of which the sum of $50,000 was paid in cash. The purchaser, to secure the balance of the purchase price, executed on the date last mentioned notes to James Chesney for $100,000, secured by chattel mortgages on the personal property, and a real estate mortgage on the land so sold. The indebtedness drew interest at the rate of 7 per cent per annum. The real estate mortgage was duly filed for record and recorded in book 77, page 120, mortgage records of Uinta county, Wyoming. In 1919, Edmund L. Chesney organized a corporation under the name of Chesney Stock Farm, Inc., but he was the only stockholder thereof. The property above mentioned was transferred

to that corporation. Some time before the 3rd day of March, 1921, Edmund L. Chesney entered into negotiations with one Ernest Wooley, of Salt Lake City, for the sale of all of said property. Wooley organized a corporation under the name of Valley Live Stock Company, defendant in this case, and intended to and did purchase the real and personal property mentioned above in the name of such company. The sale was completed on March 3, 1921. The Chesney Stock Farm, Inc., executed a deed to the lands aforesaid and a bill of sale of the personal property to the Valley Live Stock Company. The former chattel mortgages held by James Chesney were released, and new chattel mortgages to him were made and executed by the Valley Live Stock Company. As part consideration for the sale, Wooley paid to James Chesney the sum of $10,000, as interest then due on the indebtedness of $100,-000 above mentioned, and the deed to the Valley Live Stock Company states that it is subject "to one certain mortgage in favor of James Chesney for $100,000 which is recorded in the county of Uinta, state of Wyoming, in the County Recorder's office in book 77 of mortgages, page 120, which said mortgage the said grantee does hereby assume and agrees to pay." On the date last mentioned, James Chesney also made and executed to the Valley Live Stock Company a quit claim deed to the land aforesaid. This deed simply "quitclaims" the land to said company. In December of that year the Federal Reserve Bank, Uinta Mercantile Company and Blythe & Fargo Company, defendants herein, and hereinafter referred to as appellants, commenced actions against the Valley Live Stock Company to recover certain indebtedness due to the respective parties from said company, and attached the real property hereinabove mentioned. Two of these parties, thereafter and before the commencement of this action, obtained judgments in their respective suits. It seems that these creditors made the claim, when

they caused the lands aforesaid to be attached, that the quit claim deed executed, as heretofore mentioned, on March 3, 1921, had the effect of releasing the mortgage of $100,000, given on October 1, 1917, by Edmund L. Chesney to James Chesney. The latter, respondent herein, accordingly brought this action against the Valley Live Stock Company and the appellants herein for the purpose of cancelling such quit claim deed and having the rights of the defendants to the action, in and to the real estate described in such deed, declared to be junior and inferior to his rights under the mortgage. He alleges in his petition that Edmund L. Chesney executed to him the mortgage of $100,000 aforesaid; that said mortgage was duly filed of record in Uinta county, Wyoming, on November 30, 1917; that it is his property and there is due and owing thereon the sum of $100,000, with interest at the rate of 7 per cent per annum from the 1st day of March, 1921; that said real estate was conveyed to the Valley Live Stock Company, a corporation, on March 3, 1921; that in and by the terms of that conveyance said company assumed and agreed to pay said mortgage and said mortgage indebtedness; that since March 3, 1921, there has existed and now exists upon the deed records of Uinta county, Wyoming, what purports to be a quit claim deed, executed by plaintiff on March 3, 1921, to the Valley Live Stock Company. We quote the remaining part of the petition verbatim:

"Plaintiff alleges that said purported deed is spurious, fictitious, wholly without consideration, fraudulent and invalid, and that the purported record thereof is likewise spurious, invalid and fraudulent because of the fictitious and spurious character of the purported deed; that there never was any agreement or contract between the plaintiff and the said defendant, Valley Live Stock Company, with respect to the making or execution of any such deed, neither was there any duty owing by the plaintiff to make

or execute such instrument; neither was there any consideration at any time for the making or execution of any such instrument; that if any such purported instrument existed, the action is not and was not the action of plaintiff and that the same is a forgery; that the defendants and each of them assert or claim some right or interest under said alleged, spurious and invalid record and purported deed, and in and to the said premises, but whatever right or interest said defendants or any of them may have therein, as against said mortgage of plaintiff, is without right, and any such claim or interest is junior and inferior to the said mortgage and mortgage lien of the plaintiff. Wherefore, the plaintiff prays judgment, as against all of said defendants, that said purported quit claim deed and the record thereof may be cancelled, set aside and held for naught, and that the court grant to plaintiff such other and further relief as in the premises may be just, equitable and proper.''

The testimony in the case shows that it was agreed between Wooley and Edmund L. Chesney that the following papers should be executed, namely, a deed to the land and a bill of sale to the personal property made by the Chesney Stock Farm, Inc. to the Valley Live Stock Company; new chattel mortgages from the company to James Chesney, and released by the latter of the old chattel mortgages. It was further agreed that the mortgage on the land to James Chesney should be assumed by the Valley Live Stock Company, and that no new real estate mortgage should be executed. While James Chesney denied that he executed the quit claim deed, he admitted that the grantor's signature thereon looked like his own, and there is no doubt that the instrument was actually executed by him. But he made no agreement to execute it; nor was there any understanding between Wooley and Edmund C. Chesney. that it should be executed. The evidence tends to show that he had no intention whatever to release the

real estate mortgage which he held.  On the contrary, the testimony tends to show that the quit claim deed was executed by mistake or fraud and without any intention whatever on the part of any of the parties connected with the transaction that it should operate as a release of the real estate mortgage.  The court found the facts in reference to the existence of the mortgage aforesaid; that it was assumed and agreed to be paid by the Valley Live Stock Company; that James Chesney signed the quit claim deed; that there never was any agreement or contract between James Chesney and the Valley Live Stock Company with respect to the making or execution of such deed; that there was no duty owing by respondent to execute it and that there was no consideration for it; that it is void and should be cancelled, and whatever rights the appellants herein have in and to the lands covered by said mortgage, are junior and inferior to the mortgage lien of James Chesney.  Judgment was entered accordingly, from which the appellants herein have appealed.

1.  The appellants herein claim that the action herein is one to cancel the quit claim deed aforesaid on the sole ground of forgery; that no other grounds are set forth in the petition; that no other cause of action is alleged, and that the court having found that the deed aforesaid was actually executed by James Chesney, the judgment herein should necessarily have been in favor of the appellants. The respondent, on the other hand, contends that the petition herein is one for the purpose of removing a cloud from the title of the land aforesaid, as against the interests of the respondent under his mortgage, and that all the allegations of the petition as to forgery may be stricken out and still leave a petition sufficient in law for the purpose of removing such cloud.  We think the contention of respondent is correct.  It is true that the allegations to the effect that the quit claim deed aforesaid is a forgery, are emphasized.  Nevertheless, the respondent alleges the exist-

ence of his mortgage; that the Valley Live Stock Company assumed and agreed to pay it on the very day that the deed aforesaid was executed; that no duty was owing on respondent's part to make such deed, and that there was no consideration therefor.   No motion was made to have the petition made more specific and we must, accordingly, construe its allegations liberally, and it is apparent that if we assume as true the fact, as alleged, that there was no consideration for the deed, it must necessarily, if intended as a release of the mortgage, have been made as a gift to the Valley Live Stock Company.   But the foregoing allegations as a whole clearly negative such intention, and it may be fairly gathered therefrom, we think, that it was the intention of the parties to keep the mortgage in force and effect; and that the deed, accordingly, was executed for some other purpose or by accident or mistake.

2.   Counsel for respondent contend, as heretofore stated, that this is an action to remove a cloud from title.   We so construe it.   The quit claim deed in question is not, of course, a cloud upon the land as against the holder of the legal title; it is rather an obstruction and a hindrance to, and a cloud upon, the mortgage and the lien created thereby.   Nevertheless an action to remove such obstruction, hindrance or cloud belongs to the category of actions, and is a species of the class of actions, the aim of which is, like in ordinary actions to quiet title and remove clouds, to secure to the proper party the full enjoyment of his rights and interest in property.   Such obstruction or cloud in a case of a quit claim deed as appears here, might be removed by showing the deed to be forged, or that it was obtained through fraud, accident or mistake, or simply that it should not, upon some legal ground, have the effect that is claimed for it.   In the instant case it is wholly immaterial to appellants whether the deed in question is wholly cancelled or is simply declared to be without effect on respondent's mortgage.   The result, as to them, is the same

in either case. Appellants, however, contend that no such action lies. They insist that a plaintiff in such action must be in possession of the land as declared by section 6243, W. C. S. 1920, and as stated in many cases where an action to quiet title or remove a cloud is brought. This is one of the vital questions before us. The authorities directly in point are not numerous, and yet we think that a consideration of the fundamental principles of equity, and of similar or analogous cases, will make the solution of the question comparatively easy. We might, in the first place, say that many cases and authorities hold that a holder of only an equitable title to land is not barred from bringing an action to quiet title or remove a cloud therefrom, simply because he is not in possession of the premises. 32 Cyc. 1377; 4 Pomeroy Eq. Jur. (4th ed.) sec. 1399, and note. In Lancaster v. Oil Co., 241 U. S. 551; 36 Sup. Ct. 711, 60 L. Ed. 1161, the court said that the reason of the rule requiring a plaintiff in such action to have possession fails in a case where he would have no right, if out of possession, to bring an action in ejectment. In the case at bar the appellant had no equitable *title;* he had only a lien. However, whatever difference in principle that would make, if any, could not be held to be prejudicial to the lien holder, for, as we said in the recent case of Platte County State Bank v. Frantz, (Wyo.) 239 Pac. 531, "it is now generally recognized that it is the peculiar province of a court of equity to protect liens." See also 21 C. J. 115; Dawson v. Sims, 14 Or. 561; 13 Pac. 506; Gilchrest v. R. Co., (C. C.) 58 Fed. 708. A court of equity must not hesitate to protect property rights, where no relief can be granted in actions at law. If able to give such relief in such cases, it becomes, as has been well said, a matter of right and is not merely a matter of grace. Equity occupies the whole domain of conscience and justice, limited only by legislative enactments. Want of precedent does not prevent its application in proper cases. It will, if nec-

essary, extend its protective hand into new fields, where injustice, iniquity and unfairness need a corrective. The main criteria in such cases are: Is there a property right, and is there an adequate remedy at law? If the first question is answered in the affirmative and the second in the negative, equity cannot, ordinarily, deny its protection. Cullman Property Co. v. Lumbar Co., 201 Ala. 150; 77 So. 574; Sullivan et al. v. Jones, 208 Pa. 540, 57 Atl. 1065, 66 L. R. A. 712; Grasselli Ch. Co. v. Explosives Co., 252 Fed. 456, 164 C. C. D. 380; Renwick v. Hay, 90 N. J. Eq. 148; 106 Atl. 547, 21 C. J. 35: See Pomeroy Eq. Jur., secs. 171, 172. Did respondent have a right in the case at bar? We think so. The quit claim deed in question cast a cloud upon his rights under the mortgage. There is a legal presumption that this cloud on and this obstruction to his mortgage was an injury to him, (Elder v. Mining Co., 237 Fed. 966, 150 C. C. A. 616, and cases cited) to which, surely, if his claim is true, he was not compelled to submit. Nor can we conceive of any action at law under which respondent would have been entitled to relief. See Depue v. Miller, 65 W. Va. 120, 64 S. E. 740, 23 L. R. A. N. S. 775.

The question of possession in this connection does not seem to be considered of any importance by the authorities, except in determining whether or not there is a speedy and adequate remedy at law. The courts have readily cancelled instruments which have been an obstruction to rights, not only in real but also in personal property, where no adequate and speedy remedy at law existed. In the case of Martin v. Graves, (Mass.) 5 Allen 601, the court stated the general principle that:

"Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of

equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice and the rights of the parties may require.''

In the case of Earl v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012, it was held that a trustee in bankruptcy may maintain an action to remove a cloud on the title of a bankrupt, whose property consists of a remainder in real property, converted into personal property, and of which the trustee has no possession, holding that such right exists in order that a fair sale of the property may be made. The court said:

''The only remedy which the plaintiff has to prevent a sacrifice sale of trust property by reason of this claim is to ask the court to determine his right to sell before he offers the property. The right and duty of the plaintiff to have a fair sale of the property being evident, the court should not withhold the right asked.''

So in the case of Voss v. Murray, 50 O. S. 19, 32 N. E. 1112, an attaching creditor brought an action for the purpose of removing a cloud upon the property attached, which was in the possession of the sheriff. The court said:

''That one, who as an attaching creditor, has acquired a lien upon personal property, may maintain a suit for the purpose of ascertaining the extent or existence of adverse claims to the same property or removing clouds upon it that would affect its sale in the proceeding, is supported by principle as well as authority. The property being in the custody of the sheriff, under the attachment, the creditor has no possessory action against other claimants or lien holders by which the validity of their claims can be determined, and as they may not choose to institute such an action, he is without remedy at law other than to sell

the property subject to the clouds upon it, which is not an adequate remedy. For these reasons similar suits have been sustained.''

In the case of New York etc. Railway Co. v. Schuyler, 17 N. Y. 592, the court held that the plaintiff corporation had a right to bring an action to cancel spurious stock which cast a cloud upon genuine stock and in the course of the opinion said, among other things:

''There is no head of equity jurisdiction more firmly established than that which embraces the cancellation of instruments which are capable of a vexatious use if the means of defense at law may be impaired or lost, or when they are calculated to throw a cloud upon the interest of the party seeking relief. * * * Whatever their character, if they are capable of being used as a means of vexation and annoyance, if they throw a cloud upon title or disturb the tranquil enjoyment of the property, then it is against conscience and equity that they should be outstanding and they ought to be cancelled. * * * Their very existence, outstanding, is unjust, because it must of necessity exercise a most depressing influence upon the real stock of the corporation.''

Similar in effect are Thompson v. Irrigation District, 227 Fed. 560; 142 C. C. A. 192; Stebbins v. Perry Co., 167 Ill. 567, 47 N. E. 1049; Sherman v. Fitch, 98 Mass. 59; Magnuson v. Clithero, 101 Wisc. 551, 77 N. W. 882. See also Rosenbaum v. Foss, 4 S. D. 184, 56 N. W. 114; Newton v. McGee, 31 S. D. 216, 140 N. W. 252; Fridley v. Munson, 46 S. D. 532, 194 N. W. 840, which were decided under a statute probably merely declaratory of the common law.

Nearly all the foregoing cases relate to personal property, but the principles therein announced apply with at least as great a force in cases where rights in real property can not be adequately protected in an action at law. In

Keyes v. Scanlen, 63 Wisc. 345, 23 N. W. 570, the plaintiff was a lien holder under a judgment. In the case of Wilson v. Hooser, 72 Wisc. 420, 39 N. W. 772, the plaintiff was a mortgage-lien holder. Both actions were brought for the purpose of cancelling a cloud upon the lien and the actions were held to be maintainable under a statute which expressly granted the right of such action to a lien holder. We think, however, that this statute is probably merely declaratory of the common law. The case of Redin v. Branhan, 43 Minn. 283, 45 N. W. 445, was an action to cancel a cloud upon title that obstructed a second mortgagee, and in upholding the right of action and stating the basic reasons therefor, the court said, among other things:

"That reason is that the party has no adequate remedy at law, and to require him to await the action of the party claiming under the instrument or other matter constituting a cloud until perhaps his evidence and ability to defend against it is lost by lapse of time, would, in many cases, be to deny him any remedy. The reason is as forcible in the case of one having only an equitable estate, or merely a lien, as in that of the legal owner. * * * It could hardly be claimed that he could seek such relief, not in an independent action, but only when he brought his action to foreclose."

In the case of Love v. Bryson, 57 Ark. 589, 22 S. W. 341, it was said that a mortgagee may maintain a suit to quiet title preparatory to the sale under the mortgage. The holding in Polk v. Reynolds, 31 Md. 106, was the same, the court saying of an assignee of a mortgage that he had "unquestionably a right to maintain this suit to relieve the mortgaged estate from the cloud and embarrassment produced by the unfounded pretensions of the appellants."

It is probably true that in the two cases last cited the mortgagee was considered to be the owner of the legal

title.   We are unable to perceive, however, why the prin-
ciple there held should apply any the less in a case where
a mortgage, as in this state, is considered only a lien.   In
fact the same rule has been applied in cases where plain-
tiff had only a judgment-lien, and it cannot, of course, be
said that a lien of a mortgage is inferior in character to
a judgment-lien.   Thus it was held in the case of Ledyard
v. Chapin, 6 Ind. 320, that a judgment-lien holder may
bring an action to remove a cloud from the title of the
land on which the lien exists.   So in the case of Saltmarsh
v. Smith, 32 Ala. 404, it was held that a judgment creditor
may bring an action to remove a cloud upon title, the
court saying in part:

"It (the instrument sought to be cancelled) formed a
cloud upon the title, which a court of chancery might re-
move, at the instance of a creditor,  *  *  *  interested in
having the real estate sold to advantage and impediments
to such sale removed.   The equity of the bill is too clear to
admit of discussion."

And so it was said in the case of Dargan v. Waring, 11
Ala. 988, 993:

"A judgment creditor may resort to a court of equity
not only to subject the equitable interests of his debtor,
but for the purpose of removing impediments to the sale
at its value of an estate which may be reached by a fieri
facias."

In fact the cases brought by judgment creditors to de-
clare conveyances as fraudulent are all illustrations of the
principle herein mentioned, and it is generally held that
such creditor may bring such actions before proceeding
to levy upon and sell the land.   Bank v. Newton, 13 Colo.
239, 22 Pac. 444, and cases there cited.   Murdock v. Wil-
son, 19 Colo. 296, 35 Pac. 532.   As to the right of judg-

ment creditors generally, to bring actions to remove clouds, see 34 C. J. 616; as to attaching creditors, see 6 C. J. 269; as to holders of vendor's lien, see Pomeroy's Equitable Remedies (2nd ed.), notes to section 2152.

There is a statement in the case of The Pennisula Naval Stores Company v. Cox, 57 Fla. 505, 49 So. 191, which seemingly is contrary to the view herein expressed, but the statement does not seem to have been necessary to the decision. It must, of course, be understood that an action to remove a cloud cannot take the place of a suit to foreclose a mortgage. Thus it is held in the cases of Fields v. Cobby, 22 Utah 415, 62 Pac. 1020, and DeCastro v. Barry, 79 Cal. 443, 21 Pac. 946, that a mortgage-lien holder cannot bring an action to determine adverse claims against the holder of the legal title, which, in effect, would be equivalent to an action for strict foreclosure. The action must be one for the protection of the lien or to aid in its ultimate enforcement. And where, as in the case at bar, the cloud that exists would be a hindrance and obstruction to an advantageous sale under a mortgage, no reason exists why the mortgagee should not be able to bring such action. The rights under the quit claim deed in the case at bar could, of course, have been determined in an action of foreclosure, but that fact ought not, we think, to be a ground for denying the right to bring the present action. A cloud like that at bar might frequently appear long before the right of foreclosure would be open to a mortgagee. Further, the mortgage in the case at bar contains a power of sale, giving the right to the mortgagee to foreclose without an action in court. That right should not be impaired by holding that the cloud herein mentioned may not be removed in the present action.

3. We have heretofore mentioned the ground upon which the action herein may be held to be based, namely that the quit claim deed heretofore mentioned, while a cloud upon the rights of the mortgagee, has not in fact the

effect of releasing the real estate mortgage above mention-
ed, because the intention that it should have that effect is
entirely lacking.   We think that this ground is sufficient.
While it is possibly true that a quit claim deed, from a
mortgagee to the mortgagor or his assignee, of the mort-
gaged premises, is prima facie a release and satisfaction
of the mortgage lien (Waters v. Waters and Jones, 20 Ia.
363, 89 Am. Dec. 540), the court will look into the intent
of the parties, and if the intent is not to release the mort-
gage, that intent will prevail.   Barr v. Foster, 25 Colo. 28,
52 Pac. 1101; Mabie v. Hatinger, 48 Mich. 341, 12 N. W.
198; Green v. Currier, 63 N. H. 563, 3 Atl. 428; McReyn-
olds v. Stoats, 288 Ill. 22, 122 N. E. 860; Washington Co.
R. Co. v. Cotton Mills Co., 104 Me. 527, 72 Atl. 491; John-
son v. Leonards, 68 Me. 237; Morris v. Hartley, 26 Cal.
App. 61, 146 Pac. 73, 27 Cyc. 1419.   It may be that a con-
veyance of property should not, as argued by counsel for
appellant, and as shown by a number of authorities by
them cited, be set aside and cancelled upon the sole ground
of lack of consideration.   But this is not such a case.   The
lack of consideration is only one of the elements that aids
in determining the intent of the parties in executing the
quit claim deed.   Counsel for appellants say that the trial
court based its decision upon the sole ground that there
was a lack of consideration for the quit claim deed.   The
claim is not, perhaps, unfounded, though not entirely
clear.   But that is immaterial.   The court found that the
rights of the appellants were junior and inferior to the
rights of the respondent under his mortgage.   It arrived
at the correct conclusion, and we cannot reverse the case,
because such conclusion is founded partially or wholly
upon the wrong premises.

4.   Many errors are assigned, though apparently not
argued, as to the admission of testimony by the court
which tended to show that the respondent was induced to
sign the deed by fraud.   It is said that the facts constitut-

ing fraud were not pleaded and that such testimony was not, accordingly, admissible over objections. There are two answers. In the first place, the court did not find the existence of any fraud, and the admission of testimony, accordingly, tending to show it, would be without prejudice. In the second place, most, if not all, of this testimony was proper as showing that there was no intent that the quit claim deed should operate as a release of the real estate mortgage.

5. It is argued that the court erred in finding that there was no consideration for the execution of the quit claim deed. It is claimed that the assumption by the Valley Live Stock Company of the mortgage indebtedness of $100,000, the execution of the chattel mortgages by that company and the payment of $10,000 interest to the respondent, were ample consideration. This objection is, perhaps, already sufficiently answered by what we have said heretofore. We might add, however, that we do not think that the finding of the court was incorrect. The consideration above mentioned was given by the Valley Live Stock Company or by Mr. Wooley, not pursuant to any contract with respondent, but pursuant to the contract made with Edmund L. Chesney or the Chesney Stock Farm, Inc., which did not contemplate the execution of the quit claim deed. The interest paid to respondent was already due. He received no new consideration by reason of the payment thereof. It was paid pursuant to the contract with Edmund L. Chesney, to relieve the latter from the burden thereof. The new chattel mortgages and the assumption of the indebtedness in the deed to the Valley Live Stock Company furnish no consideration for the execution of the quit claim deed, because, so far as the evidence in the case shows, it was only a matter of grace that the respondent consented to the substitution of one debtor for the other. In other words, the consideration, mentioned by counsel for the appellants, was a consideration

moving to Edmund L. Chesney or the Chesney Stock Farm, Inc., pursuant to the contract entered into with them, and can in no sense, so far as the record in this case shows, be taken as a consideration for the execution of the quit claim deed in question. We might say further, that if we had felt constrained to have reversed the judgment below because of the insufficiency of the.pleadings, the ultimate result would, probably, in that event, not have been changed in another trial, after amendment of the pleadings.

It follows from what we have said that the judgment of the District Court should be affirmed, and it is so ordered.

*Affirmed.*

Potter, C. J., and Kimball, J., concur.