The following is the charge of the court to the jury:
Westbrook, J.
This action, gentlemen, is in tort, and is based upon the alleged unlawful acts of the defendant.
The plaintiff, Jay Howland, a farmer of the town of Florida, and the defendant, Benjamin Baird, of the same town, are adjoining owners of farms ; and it is alleged on the part of the plaintiff that the defendant has done a wrong by reason of which he has sustained damage, and this action has been brought to recover the damages which the plaintiff, alleges that he has sustained by reason of this wrong.
The particular wrong complained of is this: The plaintiff alleges that the defendant, in building and maintaining his part of the division line fence between their farms, as the law required him todo, failed to build and maintain a proper and suitable fence, but instead thereof he built an unlawful fence, an improper and unsuitable fence; that he built the same of sharp barbed wires strung from the tops of the fence stakes, and of such a dangerous character that one of the plaintiff’s young horses, running in his lot adjoining that of the defendant. in some way jumped upon the barbed wires of this fence and was seriously injured and damaged.
[After referring to a prior trial in which defendant had a verdict, and to the conflict of evidence as to the circumstances under which the plaintiff’s horse was injured.] There does not seem to be much conflict between the learned counsel for the parties as to the law upon this subject, though no authorities have been cited of cases of a like character.
Wire fences are of recent invention. It is but recently that wire fences have been invented and put into general use; and, therefore, it is quite important that we should consider carefully and thoroughly7 the questions involved in this case, so that their decision might guide us in the conclusion and determination of other cases of a like character that may7 occur hereafter.
This is the first case of the kind that has come before me for adjudication ; the first one, in fact, of the same serious character that has been called to my attention.
*259 In regard to the law of division fences, I would say the L'/v of this State requires that adjoining owners of open and cultivated lands shall build and maintain division line fences between them. The adjoining owners may, by oral or other agreement, or by acquiescence, divide a line fence and set aside the part that each shall build and maintain ; and, in case of failure to divide the fence between them by agreement or otherwise, the law provides the way by which the same may be divided by the fence-viewers of the town. After a line fence has been properly divided, then each adjoining owner is legally required to build and maintain his half or share of the fence 5 and, on the failure of one to do so, the other, after proper notice, may build the same and hold him responsible for the reasonable expense thereof.
The object of a division line fence is to separate the animals of each adjoining owner and prevent them from trespassing upon the premises of the other, and to restrain the animals of each adjoining owner to the inclosure of their respective owners. Each adjoining owner is legally required to build and maintain a proper and suitable fence, one that is reasonably sufficient for the objects and purposes of a division fence.
A division line fence is not legally required to be built of any particular height or size, or of any particular materials or particular style; but it must be so built as to size, height, and character, and kind of materials, that it will be proper and suitable for all the purposes of such fence, and will be reasonably safe, and not necessarily cause injury to the adjoining owner or his property or animals.
Therefore, you will consider in this case whether this fence was a proper and a suitable one. And, in reaching that conclusion, you will take into consideration all the facts and circumstances in regard to the fence ; its style; its size; its height; the material out of which it was built; the way in which it was built and maintained; the location of the fence; the knowledge that each adjoining owner had of the object and purposes for which the land of each was to be used, and how it was to *260 be used and occupied—all of these facts and circumstances you will take and consider in determining whether or not this fence was proper and suitable.
It is alleged on the part of the plaintiff that this fence was a nuisance; also that the defendant was guilty of negligence in constructing and maintaining it.
If this case comes down to the question of negligence merely, on the part of the defendant in building and maintain; ing this fence, then several propositions present themselves to be determined affirmatively against the defendant; and, upon those propositions, the plaintiff would have the burden of proof.
The plaintiff, upon the question of negligence of the defendant in building and maintaining this fence, must establish that the fence was a dangerous and an unlawful fence, and unfit for the purposes for which it was built, and was negligently constructed, and that that negligence of the defendant caused the injury to the plaintiff’s horse; and, furthermore, that the plaintiff himself was free from any negligence on his part which in any way contributed to the injury or the damage complained of. •
I think that this is not a case where the question of negligence necessarily enters into it, or where the case ougl.it properly to be disposed of upon the question or theory of negligence on the part of the defendant. It seems to me that the other position taken by the plaintiff is the one that he must stand upon and the sure and safe theory of the plaintiff’s case, if he is entitled to recover in this action; and that is, that this fence was a nuisance.
And that leads me to consider some other questions ana rules of law that are involved in and must be determined in the case.
The plaintiff alleges that this fence was of an unlawful and dangerous character, that is, was a nuisance; and, therefore, the defendant having built and maintained it, that he is liable to the plaintiff for all damages sustained, and therefore liable in this action for the injury to this horse in getting upon the fence.
*261 If this fence was a nuisance, it is not material, perhaps, that the fence was not built upon the line, but was built near to the line and upon the laud of the defendant.
The law is well settled that every owner of property must so use and maintain his property that he shall not cause any unnecessary injury or damage to his neighbor; and that is so in respect to fences and buildings, or erections of any kind, and as to excavations along or near to the line of the owner of property. If the owner of property erects and maintains upon or near the line of his own property any structure—any fence I might say—any erection that would be dangerous to persons or their animals, who, not knowing the condition, would come in contact with it and suffer serious injury, it would be a nuisance. Because, in such cases, the law makes it illegal and wrong to build and maintain such a nuisance there.
You will, therefore, inquire in this case—and I shall submit the question to yon to determine from the evidence—whether this fence was a nuisance, erected when and where it was between the lands of these parties, and of the materials with which it was erected—taking into consideration the knowledge of both parties as to the use of the adjoining lands on each, side, and of the objects and purposes of this fence.
Was this fence of such a dangerous and vicious character as to be necessarily sure to cause serious injury and damage to the cattle and horses or other animals of the adjoining owner, that might come in contact with it ? If so, then the defendant had no right to build or maintain such a fence there. Although he built it upon his own land, such a fence would be a nuisance, and the defendant would be liable for all damage that resulted to the plaintiff’s cattle or horses or other animals that might come in contact with it.
If tins fence was a nuisance, the defendant would be liable to the plaintiff for the damage and injury to this horse in getting upon the fence, unless the negligence of the plaintiff caused the injury.
That would be so notwithstanding the plaintiff might have known of the existence of this wire fence before he turned his *262 cattle into his lot. That fact, under such circumstances—if the ! fence was a nuisance—would not shield the defendant, because the plaintiff had the right to use his lot and his lands for all reasonable and necessary purposes. But, if he knew that the nuisance was there, and, by his own gross carelessness or negli- , gence, permitted his horses or cattle to be injured, why then, of 1 course, he would not he liable, because he ought not to recover damages for an injury which his own carelessness had caused.
The court having given the jury, at the close of the charge, general instructions on the law as to the measure of damages (not necessary to be repeated here), plaintiff’s counsel requested the court to call the attention of the jury to the fact that the amount of money expended for medicines, and also the reasonable value of plaintiff’s services in caring for the horse after the injury, was a proper item for .them to take into consideration upon the question of damages.
The court declined to so charge, and held that it was not a proper item to be added to the amount of damages ; that the true measure was the difference between the market value of the horse before and after the injury, as to which proof had been given.