FRANCES G. VAN GORDER, Plaintiff, *v.* EASTCHESTER ESTATES, INC., et al., Defendants.

Supreme Court, Special Term, Westchester County, January 31, 1955.

*Joseph J. O'Connell* for plaintiff.

*Samuel Weissman* for Eastchester Estates, Inc., defendant.

*J. Philip Gillespie* for Frank Bracalello, Inc., defendant.

SUPPLE, J.  Plaintiff is the owner of real property in the town of Eastchester, Westchester County, New York, commonly described as 120 Overhill Road.  Immediately in the rear of her property is land purchased by the defendant, Eastchester Estates, Inc., for the purpose of residential real estate development.  Along and extending on both sides of the boundary between the two parcels of realty was a stone wall described by plaintiff's expert Forsberg as " an old form fence with an underground footing " between four and five feet wide tapering from its lowest point to the top of the wall about three feet

above ground where the width was from twenty to twenty-four inches.

The evidence establishes that for excavation and filling the defendant, Eastchester, intermittently rented from the defendant Bracalello a back hoe with the operator at a fixed price per diem for both hoe and operator. This was common practice between the defendants and when the weather prevented use of the back hoe by Eastchester during a period of hire it paid Bracalello the amount of the operator's day's wages but nothing else for those days. Eastchester's president, in personal control of the development, instructed the operator of the hoe about the work to be performed on May 21, 1952. His explanations of what he said vary but the substance of them is that he instructed the operator of the back hoe to remove all boulders from a particular portion of land to a designated location and then bury them in a big hole about ten feet deep. The area from which these boulders were to be removed was generally indicated by him, and one side of it was the boundary line between the real property of defendant, Eastchester, and the plaintiff.

Eastchester's president said that he gave these instructions about 8:30 in the morning and that he observed the progress of the operator at various times during the morning about every hour or half hour until about 11:00 or 11:30 when, on one visit of supervision, he observed that a row or line of boulders that the operator was removing and burying might be a division barrier between Eastchester's land and the plaintiff's so he told the operator to clear the land of the brush and stones up to the wall, but not to continue breaking the wall itself. Working under his instructions the operator of the back hoe had by that time removed a great number of surface boulders in the area indicated including about twenty-eight feet of the wall straddling the property line between the plaintiff and defendant Eastchester. Exactly whose was the fault is not clear from the record. Defendant Eastchester's president admits that he observed the progress of the work every hour or half hour and it is clear that the operator acting under his instructions and during his supervision removed a substantial part of the wall and buried the boulders that had constituted it on the defendant Eastchester's land. It is equally clear that his instructions from Eastchester's president were sufficiently general to include the stones composing the wall, which resembled in some measure a mere heap or row of rough, moss-covered stones. This appearance was emphasized by the absence from the wall of any mortar or other binder to hold together the boulders composing it and

by the progressive disintegration from age to which all ancient walls submit in time.

Plaintiff asks damages for the trespass, a declaration of her rights in the wall and her right to demand its restoration on the very land on which it originally stood, approximately one half upon her land and one half on the defendant Eastchester's. She also seeks a direction to both defendants to restore the wall and a prohibition restraining Eastchester from interference with the restoration. Her demand for mandatory and prohibitory injunction she bases upon the general law of easements and party walls asserting, in effect, that long continued user and custom by and between the parties and their predecessors in titles had located, established and maintained the wall in the place, form and manner in which it was when the trespass was committed.

At common law there was no obligation upon a landowner to fence his property (*Roney* v. *Aldrich,* 44 Hun 320, 322) or to permit an adjoining landowner to encroach at all upon his land in the erection of a division line fence. If a landowner's livestock went upon the land of a neighbor, whether or not it there did damage, the owner was liable and the stock could be distrained. Every owner's land was regarded in law as enclosed, regardless of fact, and when another or his livestock broke the enclosure that other was liable. The fence laws enacted in the very early part of the last century, of which the current descendants are provisions of article 18 of the Town Law, first established the obligation to fence one's land by the requirement that each adjoining owner make and maintain a just and equitable portion of a division fence. In the enforcement of these statutes there grew up a small body of law in relation to division barriers that is applicable here, and would be even if the lands of the parties were in the village of Bronxville (see Village Law, § 89, subd. 14, compensating for omission of '' fences '' from Town Law, § 325).

The general rules established during the enforcement of these fence laws were, briefly, that a division line fence should rest equally on the land of each party (*Higgins* v. *Kingsley,* 82 Hun 150, affd. 155 N. Y. 634) and that, ordinarily, each party should erect or maintain an agreed or assigned length of the fence on both sides of the line, but the fence, within reasonable limits, could be of any material, design or construction desired by the one upon whose shoulders the burden of erection and maintenance was cast (*Rowland* v. *Baird,* 18 Abb. N. C. 256, 259), though he could use barbed wire only as specified in the statute.

A fence, in these circumstances, was any kind of barrier including a wall (*Carpenter* v. *Halsey*, 60 Barb. 45, affd. 57 N. Y. 657; *Kimball & Fink* v. *Carter*, 95 Va. 77), of any kind of material and, presumably of almost any height.

The wall here was between four and five feet wide at bottom and tapered toward the top to about twenty to twenty-four inches. Apparently no one knows when it was built, or who built it, nor is there anything in the evidence to show who, if anyone, has maintained it or repaired it. The plaintiff's request to admit, unchallenged by the defendant, establishes that it has been there for more than twenty years. Its condition and the nature of its construction indicate that it was probably built long before that, probably before the end of the last century. Whenever it was built, however, the activities and relations of the respective landowners in connection with it, both then and later during its maintenance, must, in the absence of conflicting evidence, be regarded and judged in the light of the legal obligations of those landowners under the fence laws. Though one may have performed, and the other suffered, acts, ordinarily, in time, raising a presumption of dominance on the one hand and of servitude on the other, or even reciprocal relations of that kind, the fence laws raise a presumption that requires definite evidence of some agreement or some acts and sufferance in relation to matters and things wholly outside the reach of those laws before the court can say that they were not performed and suffered in contemplation of those laws. In circumstances like these, there cannot be said to be acquiescence by either landowner in any encroachment and, consequently, neither can be said to have slept upon or waived his rights or to have acquiesced in any infringement of them, for the existence of the division line and the law respecting the duties of adjoining proprietors sufficiently explain all that can be inferred with any certainty from the existence of the wall for the prescriptive period. Even where the record contained undenied evidence of some agreement or of conceded acts and relations that would, before the fence laws, have raised in time a presumption of dominance and servitude, the Court of Appeals found itself unable to allow the usual rules to prevail over those laws (*Adams* v. *Van Alstyne*, 25 N. Y. 232, particularly at 237). This court, then, is unable to perceive how the mere existence of the wall over a long period of time could aid the plaintiff here.

Plaintiff argues that she has a perpetual easement over a strip of defendant Eastchester's land approximately two and one-quarter feet wide along the whole length of the boundary

line for the maintenance of the barrier between the adjoining properties in the same form in which it has been for the last twenty years. She shows no adverse, continuous exercise by her or her predecessors under a claim of right of any use or enjoyment of the defendant Eastchester's land, or the part of the wall resting on it, not explicable by reference to the fence laws. In the absence of any evidence that either party or his predecessors in title maintained any particular length of the wall it can be presumed only that what maintenance took place was performed by each party on his side of the line that separated their realty. Plaintiff rested no beams in the wall, she supported no building with it, it has none of the characteristics of, and is in no sense, a party wall. Party walls cease at most when both buildings they support are removed but what plaintiff claims here is a perpetual right to the use and enjoyment of the two and one-quarter foot strip along the entire length of the wall.

In the light of the obligations of the parties under the fence laws this does not follow. In *Carpenter* v. *Halsey* (60 Barb. 45, *supra*) the court did say that the defendant had no right to take stones from the plaintiff's wall but that wall was that *part* of the whole barrier allotted by agreement to the plaintiff for construction and maintenance, and further, the defendant did not remove them to substitute some other adequate barrier but merely in consequence of some quarrel over the ownership of the stone itself before it had been put into the wall. It is interesting to observe there that the defendant chose to fulfill his obligation for part of the barrier by the construction of a Virginia or worm fence with the ends of the rails alternately extending on either side of the line, while the plaintiff elected to erect a low wall as a kind of base for a straight line fence. Clearly, it could not be fairly said that if this had continued for more than twenty years, either landowner would have been obligated, under the law of prescriptive easements or party walls, to maintain or permit the maintenance *on his own side of the line* of exactly the same kind of construction theretofore used although he desired to substitute another, less primitive and cumbersome, covering less ground.

The court, then, finds no easement for plaintiff in the defendant's land or the part of the wall over it. She did have a right, however, to be undisturbed in her own half and to insist that the defendant Eastchester not remove its half of the wall except to replace it with some adequate substitute. Defendant Eastchester removed the whole wall without any intention to replace

it. If the defendant, Eastchester, found it impossible to remove its half of the wall without disturbance or destruction of plaintiff's half, then it proceeded at its peril and for the damage done her it must either restore her half of the wall or recompense her. The record shows she has herself replaced her half of the wall at a cost of $275 with one of different but less expensive construction. The complaint is in trespass against both defendants. Each answer pleads a general denial, and that of defendant Eastchester a cross complaint against the defendant Frank Bracalello, Inc., for indemnification and judgment over if the plaintiff have judgment against Eastchester. The cross complaint does not clearly indicate whether it seeks judgment over against Bracalello as a negligent sole tort-feasor or as a joint trespasser in some way primarily liable. It attributes the damage '' solely to the affirmative action and primary negligence of defendant ' Bracalello ', its agents, servants and employees ''. The record establishes that the defendant Bracalello was not an independent contractor in relation to the acts causing the damage. It let its machinery and operator to Eastchester on a per diem basis, fully surrendering control of what he should do, where he should do it, and how. It retained control only of the repair, care and manipulation of the machinery itself and for this it was liable as the general employer, and only for this. It was not responsible outside of that limited area for what he did, where he did it, or how, if it exercised care in his selection. There is no evidence that he was unfitted in any way for his position or duties.

In *McCarthy* v. *McCabe* (131 App. Div. 396) a householder upon whose personalty a constable levied an execution, sued in trespass the owner of carts and teams which, with their drivers, were either let or lent to the constable by the owner for the day. The court said (*supra,* p. 398) '' It seems to me clear that the evidence in this case justified a finding that the drivers of the teams were not the servants of the defendant on this special occasion in any sense that would render him liable to the plaintiff for their acts ''. In *Swackhamer* v. *Johnson* (39 Ore. 383) Yin provided Chinese laborers and a timekeeper as interpreter for them to Johnson. Yin paid their wages and could discharge them but had no interest in the work they did for Johnson and no voice in it. A landowner attempted to hold Yin liable for a trespass committed by them under Johnson's orders. The court said (*supra,* pp. 391–392) '' as Lee Tung Yin had no knowledge of the trespass prior to its commission, did not ratify it thereafter, was not interested in the construction

of the railroad, and had no voice in directing the laborers how, when, or where to work, he cannot be responsible for the injury which he was powerless to prevent ''.

The acts constituting the trespass here were the acts of the operator as servant of Eastchester, since there was no negligence in the selection of the operator or in the repair, care and manipulation of the machinery. Without evidence of negligence in the selection of the operator or in the manipulation of the machinery, Bracalello could not be liable to Eastchester for damage it suffered in consequence of torts committed by its own servant in its sole business (*Blasi* v. *Western Union Tel. Co.,* 118 Misc. 436).

It follows that plaintiff can have no judgment against Bracalello for the trespass and, in the absence of any evidence that Bracalello was negligent in the selection of the operator as one to manipulate the machine for Eastchester, clearly, it is not liable to Eastchester. The complaint, then, by plaintiff against Bracalello will be dismissed on the merits and the cross complaint against Bracalello will be dismissed on the merits, with costs to the defendant Bracalello against the defendant Eastchester. Plaintiff will be granted judgment against the defendant Eastchester Estates, Inc., for the sum of $297, with costs and disbursements for the trespass upon her land including the removal of the half of the wall that rested thereon. The measure of damages in circumstances like this is described in *Hartshorn* v. *Chaddock* (135 N. Y. 116, 121–122) as follows: '' If my neighbor remove from my land, by means of a trespass, a load of sand or gravel, the act might have no appreciable effect upon the value of the property as a whole, and yet I would be entitled to damages, but in that case they would be measured by the value of the sand or gravel removed, and the expense of repairing any injury caused by its removal. If buildings are injured, fences or other fixtures removed, the cost of restoring the buildings and the value of the fixtures would generally constitute complete indemnity. In this case the defendant is chargeable with removing a portion of the soil from the plaintiff's land. Had the quantity removed been one yard, instead of sixteen hundred, no one, it is believed, would then contend that the plaintiff would be restricted to such damages as he could show by the diminution in value of the land. In this respect, the present is a border case. It is difficult to formulate a general rule that would apply to all cases of injury, such as this, to real property. Had the defendant broken a window in the plaintiff's house, there is no doubt that the cost of completely repairing it would be the

**344**

proper measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages ''.

The duty imposed upon Eastchester by the fence laws to provide half the barrier between the respective parcels and the land to support it can be better coerced for plaintiff's relief by a proceeding under those laws than by any direction in equity here. Even if this were not generally true, it would be so here for the record does not contain enough to inform the court about the parties' alternative desires and intentions in relation to the twenty-eight feet along which Eastchester removed the whole barrier.

Submit judgment on notice at Special Term, Part II, White Plains.