CESEAR AGOSTINI *vs.* W. J. HALLORAN CO.

FEBRUARY 9, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.   This is an action of trespass on the case for negligence which was tried in the superior court to a jury and resulted in a verdict for the plaintiff.   The case is here on the defendant's exceptions to the trial justice's denial of its motion for a directed verdict and to his denial of its motion for a new trial.

The plaintiff's cause of action arose out of an accident in which he was injured by the alleged negligent operation of defendant's crane on the Tidewater Oil Company's premises in East Providence.   At the time of the accident, October 1, 1948, the crane was rented to the Agostini Construction Company and was operated by Leslie H. Usher, an employee of defendant.   At the place of the accident where the construction company was digging some test holes for the oil company along a gasoline pipe line there were three overhead lines of uninsulated high tension wires about 35 or 40 feet above the ground.

After one test hole had been dug to the satisfaction of plaintiff he pointed out the place where a second hole was to be dug about 200 feet further along the pipe line.   To get there it was necessary to move the crane under the wires. Usher, the operator of the crane, accordingly adjusted the boom of the crane in a position to clear the wires, as he thought, and then gave Rocco V. Potenza, the operator of the truck on which the crane was mounted, the signal to move.   Shortly thereafter as the truck moved under the wires the end of the boom came in contact with one of them and as a result plaintiff, who was walking alongside the crane, was injured.

The accident appears to have occurred in this manner. After plaintiff had told Usher where to dig the second hole, the latter lowered the boom about five or ten feet. He then signaled Potenza to start to drive the truck in that direction. As the truck proceeded, plaintiff walked alongside it on the left near the rear cab where Usher was sitting in charge of the crane. The plaintiff testified that he reminded Usher at the time to look out for the overhead wires and Usher replied: "I have been driving a crane twenty-seven years. I know what I have got to do." But when the truck was about five or ten feet away from the wires it appeared to plaintiff's witness Donald J. Perron that the boom was rising. He testified further that when the crane proceeded under the wires a rubber tire on the end of the boom struck the first wire and the crane itself came in contact with the second wire; that there was a flash and a loud crack like the sound of a whip; and that the telephone pole then began to burn.

Usher testified that plaintiff was walking very close to the truck and had his hand on the crane. The plaintiff denied that any part of his body was touching the crane and testified he was at least a foot and a half away from it. The defendant's witness Potenza corroborated plaintiff's testimony as to the latter fact. It further appears from all the testimony that plaintiff was thrown into the air by the force of the explosion and landed on his back with his head lying behind the rear left wheel of the crane. He was rendered unconscious and was removed to the hospital where he was revived and was found to have sustained third degree burns on his shoulder, wrist and leg.

The Agostini Construction Company is a partnership consisting of plaintiff and his brother John Agostini. The plaintiff was in sole charge of the Agostini company's job on the oil company's premises. He hired the crane, which was to be operated by defendant's agents, and when it arrived on the job he directed the operators where and how deep to dig the holes, but nothing more, at least according to his

testimony. Usher testified that plaintiff agreed to act as his signalman in the actual operation of the crane, but plaintiff categorically denied this.

Potenza, like Usher, was an employee of defendant and was specially skilled in the operation of the rented equipment. It further appeared that such equipment was very valuable and could be safely and efficiently operated only by skilled and experienced specialists. The plaintiff had no experience or skill in operating a crane nor does it appear from the evidence that he undertook at any time before the accident to tell either Potenza or Usher how he should operate the part of the equipment under his care or what to do or not to do in its operation on this particular job.

In support of its exception to the denial of its motion for a directed verdict, defendant contends the evidence shows that plaintiff, as a matter of law, was in control of Usher and Potenza while they were working under his direction and was therefore the master. It contends further the evidence also shows that plaintiff was clearly guilty of contributory negligence as a matter of law. In our view neither contention is tenable.

The evidence is undisputed that these operators were defendant's employees, that only defendant could discharge or replace them, and that under the rental contract plaintiff was given no right to control them in any way in the actual operation of the crane. Such right of control remained with defendant and, therefore, its employees while operating the crane continued to be its servants. In this state the right of control over a borrowed employee is determinative of the question whether he is the servant of the lending employer or of the borrowing employer. *Higham* v. *T. W. Waterman Co.*, 32 R. I. 578. That principle is now well settled here. *Coyne* v. *Coastwise Dredging Co.*, 36 R. I. 278; *Henry* v. *Mondillo*, 49 R. I. 261; *McCarthy Freight System, Inc.* v. *Durand*, 63 R. I. 430. We think this principle is applicable to the facts in the case at bar, although defend-

ant has attempted to distinguish them from those in the *Higham* case so as to avoid such application.

It is true that Usher and Potenza operated the equipment only when and where directed by the plaintiff, but this did not serve to make them plaintiff's servants. As this court said in *Higham* v. *T. W. Waterman Co.*, *supra*, at page 585, control of that nature "was the same as that which a person exercises over the driver of the carriage in which he rides, when he hires a carriage and horses with a driver from a livery stable, or which a person has over the driver of a moving van sent by a teaming company upon a contract to move household goods. There is necessarily a certain amount of information, instruction and direction which the hirer must give to the driver, as he would be obliged to give the principal if he had come himself instead of sending his servant." In the case at bar it was necessary for plaintiff to give the directions he did in order to receive the benefit of his contract. He had a right to give such directions without thereby making defendant's employees his servants.

On a similar state of facts in *Younkers* v. *Ocean County*, 130 N.J.L. 607, it was held that a motion for a directed verdict for defendant was properly denied. In the same state in a somewhat recent case involving a crane, in circumstances like the instant case, it was held that the question of who was the master of the operator of the crane was properly left to the jury. *Roberts* v. *George M. Brewster & Son, Inc.*, 13 N. J. Super. 462. Whether the lent servant is to continue in the general employment of the lending master is ordinarily a question of fact the determination of which may be aided by the consideration of several factors. But in the absence of evidence to the contrary there is an inference that such general employment continues so long as the service rendered by the servant is the business entrusted to him by his general employer. Here the business entrusted to Usher and Potenza exclusively by defendant was the operation of its crane as directed

by plaintiff under the contract of hiring. This farming out of its servants and equipment does not necessarily imply that defendant's control over them ceased while they were operating the crane for plaintiff. In fact it is declared in 1 Restatement, Agency, chap. 7, §227 b, p. 501: "There is no inference that because the general employer has permitted a division of control, he has surrendered it."

On the other hand it is stated in the same text, §227 c, p. 501: "A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist." Other factors which are relevant for consideration of the jury in determining whether the general employment continues are enumerated there and such factors are present in the case at bar. For example, the text points out that if the general employer is in the business of renting machines and especially if they are of considerable value, "there is more likely to be an intent to retain control over the instrumentality." On our view of the evidence here the issue of who, at the time of the accident, was the master of Usher and Potenza under the contract was properly submitted to the jury for their determination.

But aside from the contract defendant contends that plaintiff actually participated in such a manner in the operation of its equipment as to make him the master. It contends the evidence shows that besides telling Usher where to dig and when to stop, plaintiff also agreed with him to act as his signalman in moving the crane. However, while Usher testified to the latter fact plaintiff positively denied it. He also denied that he had interfered or assisted in any way in the actual operation of the crane or the truck. In the circumstances we think such conflict in the testimony clearly precluded the trial justice from deciding this question as a matter of law.

The defendant's final contention in support of its motion for a directed verdict is that the evidence shows plaintiff

was guilty of contributory negligence as a matter of law. It points out that in view of his knowledge of the danger from the high tension wires he did not exercise due care for his own safety in walking so close to the side of the truck. This contention requires no discussion. We are satisfied from our examination of the transcript that on all the evidence it was for the jury to say whether such conduct was reasonable in the circumstances. Negligence is ordinarily a question for the jury except where the standard of duty is fixed and the negligence is clearly defined and palpable. *Clarke* v. *Rhode Island Electric Lighting Co.*, 16 R. I. 463. Such is not the case here. All of defendant's contentions in support of its exception to the denial of its motion for a directed verdict having been found to be without merit such exception is overruled.

The next question to be considered is whether the trial justice erred in denying defendant's motion for a new trial conditionally. The trial justice approved the verdict as far as the issue of defendant's liability was concerned, but disapproved the award of $7,500 as damages on the ground that such damages were grossly excessive. However, he denied the motion for a new trial on condition that plaintiff would remit all of the damages in excess of $4,500, which remittitur plaintiff duly filed. The defendant argues that the weight of the evidence clearly preponderates against the verdict both on the issue of liability and on the damages as reduced by the remittitur.

It will not be necessary to review the evidence again in considering those contentions. Suffice it to say that after carefully reading the transcript we are of the opinion that the trial justice was not clearly wrong in approving the verdict as to liability. In fact the verdict on that issue appears to us to respond fairly and reasonably to the real merits of the controversy between the parties and to be consistent with the law as given to the jury.

With regard to the damages, we agree with the trial justice that they were grossly excessive. In our opinion as reduced

474

by the remittitur they are still rather generous, but we are not prepared to hold on review of the trial justice's decision that they are still grossly excessive so as to justify us in saying that he was clearly wrong in not reducing them further.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Crowe & Hetherington,* for plaintiff.

*Carroll & Dwyer, John G. Carroll,* for defendant.