C. F. YEOMAN, Bob Yeoman and Susano Trujillo, Appellants (Defendants below),

v.

Gale R. FULTON, Appellee (Plaintiff below).

No. 3025.

Supreme Court of Wyoming.

Nov. 30, 1961.

John E. Stanfield and Pence & Millett, Laramie, for appellants.

John F. Sullivan, Laramie, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Fulton sued C. F. Yeoman and Bob Yeoman, constructors, and Trujillo, their employee, for $700 damage to an aggregate block basement wall, allegedly caused when Trujillo performed certain adjacent backfilling operations in a negligent manner. Defendants denied generally, and the matter was heard by the court, sitting without a jury. Judgment was entered for plaintiff in the sum of $435, and defendants have appealed, urging two grounds of error: (1) Plaintiff failed to establish that any neglect of Trujillo was the proximate cause of the damage, and (2) Even if Trujillo had been negligent the Yeomans were not liable since he was a servant whom plaintiff had borrowed from defendants.

According to the evidence, plaintiff, somewhat experienced in both carpentry and the operation of heavy machinery, was in the process of building a residence, largely by his own efforts and during his spare time. He arranged with Bob Yeoman that Trujillo would fill the space on the outside of the basement walls with a Hough front-end loader, an operation known as backfilling. Fulton was not present on July 9, 1959, when Trujillo arrived, but returned later in the morning, instructed the operator what was to be done, and left. Trujillo proceeded with the work and had completed the backfilling on all except the north wall when he heard it crack. He made some examination, tried to brace the wall the best he could, and then called Bob Yeoman who instructed him to take the Hough back, get another machine, and dig out the backfill before the wall finished falling in or cracked any more.

As will be mentioned later, there was some conflict in the evidence regarding the conversations and also as to the activities of Trujillo during the time of the backfilling. Defendants insist that there was no showing of neglect on the part of Trujillo and no proof that his allegedly careless act was the proximate cause of the injury, urging that there were many other reasonable explanations for the damage to the wall, one of which was its improper construction. The trial court, the exclusive judge of the credibility of the witnesses, was entitled to evaluate the testimony and apparently rejected such explanations.

Plaintiff does not challenge defendants' quotation of Savage v. Town of Lander, 77 Wyo. 157, 309 P.2d 152, 158, "To justify a recovery the wrongful act charged must be the proximate or legal cause of the injury complained of," but contends that there was substantial evidence upon which the court might properly base its finding of negligence.

An analysis of the evidence does reveal that the proof is somewhat less than

might be desired in negligence cases. For instance, it is said in A.L.I. Restatement, Torts § 282 (1934), that negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. The section following indicates that the standard of conduct must be such as would be adopted by a reasonable man under like circumstances. Similarly, Prosser, Torts, p. 191 (1941) says that the issue of negligence presents a number of points which must be resolved by the court, including the existence or nonexistence of a duty, and both the general and special standards of conduct applicable under the circumstances. In the present case, no standard was presented to the court. Instead, the witnesses without being challenged gave their versions of the cause of the damage without any background of experience. Even so, it must be recalled that "In the final analysis all proof requires some process of inference, before it can be translated into an actual decision by the trier." 2, Harper and James, Torts, p. 1063 (1956).

Collins, who laid the blocks in plaintiff's basement, testified without objection that the tracks of the Hough machine were from eighteen to thirty inches from the north wall and four to five inches deep, and that when plaintiff accused him of poor workmanship he responded:

> " * * * it wasn't my fault * * * it was an outside pressure. I went to the corner and I could see the tracks going with the wall on the soft fill had caused the cave-in which is quite common with basements and backfilling when you put heavy machinery on soft fill."

The same witness, again without objection, stated that he had previously said that the cost of repairing "would run $400.00 to $450.00. Maybe around $435.00."

Although Trujillo denied that the tracks were as close to the wall or as deep as Collins contended, there was substantial evidence before the court to show that Trujillo's action was the cause of the injury and that the damage was the amount recited in the judgment.

Defendants further insist that even if there was negligence the Yeomans' loaning of their servant to Fulton for hire established conditions which would relieve them of liability. The evidence relating to the agreement between the parties concerning the work to be done was vague.

Fulton said that he went out to talk to Yeoman, who was not at home, that:

> " * * * I contacted his wife and told her my problem and asked how it could be done. She said there was two ways. One, they could contract the job. He would come out an[d] make an estimate and take it that way or they would go ahead and take it on an hourly basis. She said she would have Mr. Yeoman contact me that evening. He said * * * he would send a machine out there if I would take it on an hourly basis and pay for it that way. That way he wouldn't have to come out and make an estimate or something like that. * * * he gave me the hourly rate which he thought and I myself thought would be better because we didn't know how long the job would take."

Bob Yeoman testified:

> " * * * I called him and he wanted a machine to do some backfilling with. I told him that I could send him a Hough the next morning. He asked if he could have Susano Trujillo as the operator. I told him, 'yes.' I had two or three operators. I told him if he definitely wanted Susie I would send him out there and he said that would be fine. He said he would meet the man there and show him what he wanted done."

Fulton stated that he did not ask for Trujillo but expressed his satisfaction with the selection.

There was some conflict as to the conversation which occurred at the time the operator appeared. Fulton testified:

" * * * I told Susie what I wanted done, how I wanted these south, east, and west walls filled level, the front wall completely terraced down to the road from the front of the house which is approximately 40 feet. I also at that time told him I wanted the well house filled. I told him I remember at that time to take it especially careful on the well house because the block work in that was fresh. * * * "

Trujillo gave his version:

" * * * I said I didn't think that wall was safe and he asked me why. I told him it should be braced. So, he says he poured cement down the holes of the blocks, says, 'I am pretty sure it will hold.' He said, 'Do the best you can.' 'I haven't got tome [sic] to stick around with you,' he says, 'I am going to work.' I think that is what he told me."

After Trujillo discovered that the north wall was cracking, he said he contacted Bob Yeoman who told him "to take the Hough back where the Henry was sitting and take it back out and dig it out before it finished falling in or cracked any more." Trujillo proceeded accordingly.

As to that conversation Yeoman said, "when Susie finished the job he called me and said that the wall had broken. Upon that I told Susie to take the Hough to wherever the Henry was and pick up the Henry and go back and dig the wall out."

Defendants rely upon Blessing v. Pittman, 70 Wyo. 416, 251 P.2d 243, for the rule that where a servant is acting in the capacity of a "borrowed" or "loaned" servant at the time damage occurs the original master is not charged with the negligence of the servant. This rule, although not an exact quotation either from the opinion or the syllabi, fairly reflects the statement of the court provided the strict meaning of the words "borrowed or loaned" be kept in mind. However, in the Blessing case we were careful to indicate that there had been great controversy in this field, that ap-plication of any rule to determine when a servant was "borrowed" was difficult, and that it was within the province of the finder of fact to determine from the evidence whether or not the servant was "loaned" to a special employer so as to relieve a general employer from liability. We were fully aware of the numerous authorities whose diverse views had provoked Mr. Justice Cardozo to remark:

" * * * The law that defines or seeks to define the distinction between general and special employers is beset with distinctions so delicate that chaos is the consequence. * * * " 35 Harv. L.Rev. 113, 121.

In Tyler v. Jensen, 75 Wyo. 249, 295 P.2d 742, we again announced our view that the relationship of master and servant is one of fact to be determined by the jury.

A case upon which defendants rely is Standard Oil Company v. Anderson, 212 U. S. 215, 29 S.Ct. 252, 53 L.Ed. 480. This opinion is significant for several reasons, not the least of which is the recognition that primary legal relationship of master and servant continues by presumption until there is evidence to the contrary. Mr. Justice Moody stated, 212 U.S. at 225, 29 S.Ct. at 255:

" * * * In order to relieve the defendant [original employer] from the results of the legal relation of master and servant it must appear that that relation, for the time, had been suspended, and a new like relation between the winchman and the stevedore had been created. * * * "

He also quoted with approval from an opinion by Mr. Justice Holmes when he was on the Massachusetts Supreme Court, Driscoll v. Towle, 181 Mass. 416, 418, 63 N.E. 922:

" * * * But the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant; more than that is necessary to take him out of the relation established by the only

contract which he has made, and to make him a voluntary subject of a new sovereign,—as the master sometimes was called in the old books. * * *"

This rule was analyzed and delineated in the case of Hooper v. Brawner, 148 Md. 417, 129 A. 672, 42 A.L.R. 1437, and has since been adopted in many jurisdictions.

In 35 Am.Jur. Master and Servant § 541, p. 971, it is said:

"A master cannot avoid liability for the negligent act of his servant by merely showing that at the time of the injury, he had loaned the servant to another; but he must also show that when he loaned him, he surrendered to the borrower the right to control and direct him. * * *"

Section 227, A.L.I. Restatement, Second, Agency (1958), states:

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others."

In comment b thereunder, this work adopts the presumption previously mentioned by saying:

" * * * In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

Cases which have followed the mentioned rule of inference that original service continues include: Clifford W. Brown v. Bonesteele, 218 Or. 312, 344 P.2d 928; Larsen v. Arizona Brewing Company, 84 Ariz. 191, 325 P.2d 829; Doty v. Lacey, 114 Cal.App.2d 73, 249 P.2d 550; Keitz v. National Paving and Contracting Co., 214 Md. 479, 134 A.2d 296, 136 A.2d 229; Agostini v. W. J. Halloran Co., 82 R.I. 466,

111 A.2d 537; Stone v. Bigley Bros., Inc., 309 N.Y. 132, 127 N.E.2d 913; Edwards v. Cutler-Hammer, Inc., 272 Wis. 54, 74 N.W. 2d 606; United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239; and see Annotation, 17 A.L.R.2d 1388.

Miller v. Woolsey, 240 Iowa 450, 35 N.W. 2d 584, which turns upon the presumption, relates to a wall damaged during a backfill process. There the trial court dismissed a suit for damages against the original employer, and the supreme court reversed on the ground that there was no substantial evidence to support the conclusions of the trial court.

Another case which recognized the principle, and in fact applied it to a situation almost identical to the one at bar, is Ridgeway v. Sullivan-Long & Hagerty, Inc., 39 Ala.App. 341, 98 So.2d 665. There the pay by the hour, the work to be accomplished by a front-end loader with an operator, and the injury to a wall from alleged careless driving were shown by the evidence. Upon defendant's motion, the case was taken away from the jury, and the court of appeals reversed. Although the opinion does not cover every potential facet of the instant situation, it is most persuasive.

In the light of what we have said, it is unnecessary to discuss all of the authorities cited by defendants. In Hartford Fire Ins. Co. v. Henry J. Spieker Co., 103 Ohio App. 455, 146 N.E.2d 138, an insurer as subrogee of the lender sued for the damage caused by allowing freight cars to force mobile crane equipment against a concrete abutment. The trial court directed a verdict for the defendant borrower, and the appellate court reversed, finding that the evidence clearly showed the crane operators as reporting to the borrower's superintendent and thereafter operating the crane under his direction and supervision. That case is obviously distinguishable from the one before us because of the control of the servant by the borrower.

In Van Gorder v. Eastchester Estates, Inc., 207 Misc. 335, 137 N.Y.S.2d 789, 795, a back hoe with operator was rented by the

corporation from one Bracalello to do certain work for the purpose of residential real estate development on property adjacent to Van Gorder. Plaintiff, Van Gorder, sued defendants, Eastchester Estates and Bracalello, for damages occasioned by the operator's removal of a boundary wall. The court held that the original employer was not liable on the ground that the servant had really been following the instructions of the borrower, but incidentally announced a principle contrary to that for which the defendants are here contending:

"* * * [Bracalello] retained control only of the repair, care and manipulation of the machinery itself and *for this * * * was liable as the general employer,* and only for this. * * *" (Emphasis supplied.)

Defendants cite Van Deusen v. Ruhtz-Pike E. & Const. Corp., 238 App.Div. 178, 264 N.Y.S. 395, 397 (appeal dismissed 262 N.Y. 639, 188 N.E. 100), regarding the liability in the case of a rented caterpillar gasoline shovel and operator. That case is distinguishable from the one before us since there the findings of the court, based upon the evidence, disclosed complete control in the borrower.

Since the responsibility of the special employer is a matter to be determined by the trier of fact, we advert to the evidence in the present case. It is unquestioned that the Yeomans had Trujillo on their payroll and made deductions, withholdings, and payments for workmen's compensation, unemployment, and the like. It is uncontroverted that Fulton was not present or directing the work at the time that the damage occurred, and there is no contention that he gave any specific details as to the operation of the machine. According to Fulton's version, the directions he gave were what he wished done rather than the manner in which he wished it to be accomplished. Yeoman admitted that he gave Trujillo instructions as to the steps to be taken after he found out the damage had occurred. These circumstances would seem to show that Trujillo was not the servant of Fulton in any real sense either as to control or otherwise. Certainly, there was no evidence offered by defendants sufficient to overcome the presumption that the operator was their servant insofar as the responsibility was concerned.

The judgment must be affirmed.

Affirmed.